## THE STATE OF NEVADA EX REL. OSCAR GREENBAUM *v.* E. RHOADES.

SALES OF PUBLIC LANDS OF STATE. Section 17 of the Act of April 2, 1867, for the selection and sale of lands granted by the United States to the State of Nevada, (Statute of 1867, 165) is constitutional, and authorizes the payment of warrants drawn on the school fund for the expenses of selecting and selling school lands, though such expenses exceed the one per centum provided to be collected for that purpose by Section 9 of the same Act.

THE "TRUST" IN THE STATE REGARDING HER PUBLIC LANDS. The State of Nevada stands in the situation of an ordinary trustee as to all the public lands granted to it by the United States, except the ninety thousand acres granted for the purposes of an agricultural or mining college, as to which it has undertaken to bear the expenses of converting the trust lands into interest-bearing bonds without calling on the trust fund for reimbursement.

USE OF PROCEEDS OF SCHOOL LANDS. Section 3 of Article IX of the Constitution prohibits the legislature from using the funds arising from the sale of the public lands, which were granted for educational purposes, for any other branch of State expenditure except that immediately connected with the educational system; but it does not prohibit the use of a part of the trust estate for the purpose of making the rest available.

THIS was an original proceeding in this Court for a writ of *mandamus* to compel E. Rhoades, Treasurer of State, to pay a warrant drawn on the State School Fund. The warrant was for the sum of ten dollars and seventy-five cents, the price of certain stationery, etc., furnished the Register of the State Land Office for the use of his office in carrying into effect the "Act to provide for the selection and sale of lands granted by the United States to the State of Nevada, approved April 2d, 1867." The claim had been presented to the State Board of Examiners, and approved by them, and apportioned by two members of that Board, (C. N. Noteware, Secretary of State, dissenting) to be paid out of any money in the treasury arising from the sale of school lands. Upon this approval and apportionment the Controller drew the war-

Greenbaum *v.* Rhoades.

rant upon the school fund; but on its presentation at the Treasury, the Treasurer of State refused to pay it on the ground that the expenses of carrying the Act referred to into operation could not be charged upon the school fund, and that Section 17 of the Act of April 2d, 1867, in relation thereto, was unconstitutional.

*Thomas Wells*, for Respondent.

This proceeding was instituted in order to test the constitutionality of Section 17 of the State Land Act of 1867. The decision depends upon the construction to be given to the term " proceeds," as used in Section 3, Art. IX, of the Constitution, and of the Acts of Congress referred to in said section. The decision is of vast moment, not so much to the present generation of children, looking to constitutional and Congressional munificence for the means of education, as to the many generations to come after.

If the section of law in question be constitutional, and the funds realized from sales of the lands donated may be applied as thereby contemplated, the expected magnificent school fund of Nevada is about as large as it will ever be. If the term " proceeds," as used in the section of the Constitution under notice, means *only* so much of what these lands sell for as the Legislature has not and may not appropriate by legislation, *in esse* and *in futuro*, to pay salaries, fees, office rent and other expenses of officers and others engaged in their selection and sale, then, in effect, this munificence to the young is a myth.

There is, by its intent and operation, *an irreducible school fund* created by Section 3 of Article IX of the Constitution. The Legislature evidently so understood it when it enacted Sections 1 and 5 of the school laws of 1865, (Statutes of 1864–5, 413 ; 1867, 89) and in Sections 5, 8 and 19 of the State land law of 1867. No money, therefore, which goes into that fund can be taken out *constitutionally*, except for *investment* in United States or State securities.

It has been suggested that inasmuch as the Constitution applies " all the proceeds " arising from the enumerated sources to " educational purposes," the Legislature might enact as it did in Section 17 of the State land law. This proposition is fully met by the re-

21

quirement to use *only* for " educational purposes " the *interest* arising from the investment of the principal, but not any of the principal.

By the Court, BEATTY, C. J.

This case was brought before us by petition for writ of *mandamus* to compel the Treasurer of State to pay a certain warrant drawn on and payable out of the school fund of the State. The only question raised is whether the seventeenth section of the Act of 1867, entitled " An Act to provide for the selection and sale of land granted by the United States to the State of Nevada," is constitutional. The Act is a long one, providing the mode and manner of selling the lands granted to this State by the General Government, the method of investing the proceeds, etc. Section 9, among other things, provides that on each sale made the Register of the Land Office shall collect a fee of one per centum on the amount of sale, to be used in defraying the expenses to be incurred under the Act, and requires the Register to pay this fee into the State Treasury, to the credit of the General School Fund. Section 17 provides for drawing warrants on the General School Fund for the expenses of carrying the Act into operation. If these warrants were not to exceed the one per cent. collected by the Register, there would perhaps no question arise as to the constitutionality of this seventeenth section. But there is no doubt but that the one per cent. will fall far short of paying all the expenses of carrying this Act into effect; and the question arises whether any part of the proceeds of the sale of land can be diverted for that purpose, or whether the State is bound to pay all these expenses out of its ordinary revenues, leaving the proceeds of the lands an inviolable fund, not to be reduced by expenses of conversion or otherwise.

To determine this question we must look into the Acts of Congress in relation to this matter, as well as our own Constitution. In 1841 Congress passed a law granting to each new State 500,000 acres of land, to be used for purposes of internal improvements. This law was to take effect in each new State as it was admitted into the Union, and of course affected this State. In 1862 Congress passed a law granting to each of the States in the Union (ex-

cluding those States at that time in rebellion) thirty thousand acres of land for each Senator and Representative such States might have in Congress, to be sold, and the proceeds held in trust for the establishment of an Agricultural or Mechanic Arts College.    This Act expressly provides, and makes it a condition of the grant, that any State accepting thereof shall pay out of its ordinary revenue the expenses of selling the land, converting it into interest-bearing bonds, etc.    This Act, as it was passed, had no provision extending its benefits to States thereafter to be admitted.    In 1864 an Act was passed enabling Nevada to become a State.    In this enabling Act there was a grant of all sixteenth and thirty-sixth sections of the public lands within the State for common school purposes.    In the same Act forty sections of land are given to aid in building a State House and penitentiary.    In this Act nothing is said about the State bearing any expenses of the sale, etc., of these lands granted.    In 1866 the benefit of the Act of 1862, granting lands for agricultural colleges, etc., is extended to Nevada, and this State is authorized to apply the proceeds of her 90,000 acres of land to the establishment of a Mining College instead of an Agricultural College.    In other respects Nevada would seem to be bound by the same conditions in regard to the expenses of sale, etc., as the other States.    In this same Act of 1866 there is granted to the State of Nevada seventy sections for the establishment of a State University. In this grant there is no condition attached in regard to the expense of sale, and conversion of proceeds into interest-bearing bonds.

Taking, then, all the Acts of Congress into consideration, it would seem that the State stands in the situation of an ordinary trustee as to all these lands, except the ninety thousand acres granted for the purpose of establishing an agricultural or mining college.    In regard to this particular grant, the State has assumed not only the burdens of an ordinary trustee, but has also undertaken to bear the expense of converting the trust land into interest-bearing bonds, without calling on the trust fund for reimbursement.    In other cases, where the State stands in the place of an ordinary trustee, there could be but little doubt that she would have the right to make the trust land bear the expense of conversion into stocks or other interest-bearing funds, unless there is something in our own Con-

stitution requiring the Legislature to pay the expenses of this conversion out of other funds. The third section of Article XI of the State Constitution reads as follows :

" All lands, including the sixteenth and thirty-sixth sections in every township, donated for the benefit of public schools in the Act of the Thirty-eighth Congress, to enable the people of Nevada Territory to form a State government, the thirty thousand acres of public lands granted by an Act of Congress, approved July 2d, A.D. eighteen hundred and sixty-two, for each Senator and Representative in Congress, and all proceeds of lands that have been, or may hereafter be granted or appropriated by the United States to this State, and also the five hundred thousand acres of land granted to the new States under the Act of Congress distributing the proceeds of the public lands among the several States of the Union, approved A.D. eighteen hundred and forty-one; *provided,* that Congress makes provisions for, or authorizes such diversion to be made for the purpose herein contained, all estates that may escheat to the State, all of such per cent. as may be granted Congress on the sale of land, all fines. collected under the penal laws of the State, all property given or bequeathed to the State for educational purposes, and all proceeds derived from any or all of said sources, shall be, and the same are hereby solemnly pledged for educational purposes, and shall not be transferred to any other fund for other uses ; and the interest thereon shall from time to time be apportioned among the several counties in proportion to the ascertained numbers of persons between the ages of six and eighteen years in the different counties, and the Legislature shall provide for the sale of floating land warrants to cover the aforesaid lands, and for the investment of all proceeds derived from any of the above mentioned sources, in United States bonds, or the bonds of this State ; *provided,* that the interest only of the aforesaid proceeds shall be used for educational purposes, and any surplus interest shall be added to the principal sum ; *and provided further,* that such portions of said interest as may be necessary, may be appropriated for the support of the State University."

It is contended by respondent that this section, which pledges the several classes of land therein mentioned and all proceeds

Greenbaum *v.* Rhoades.

thereof for educational purposes, and declares that such proceeds shall not be transferred to any other fund for other uses, does in effect prohibit the Legislature from using any portion of the proceeds of sale of these lands to sell other land, and thereby make the trust estate which it holds available for its proper and legitimate uses. Possibly such may have been the intention of the framers of our Constitution, for the intent is not very clear. We are, however, inclined to think the Convention did not intend to go so far. Probably the intent was only to prohibit the Legislature from using the funds arising from the sale of these lands for internal improvements or any other branch of State expenditure except that immediately connected with our educational system. They probably had no intention of prohibiting the State from using a part of the trust estate to make the rest available; but if their attention had been called to the subject, would have left the State just where the Act of Congress placed it, in the room of an ordinary trustee with the legal right to use a part of the trust estate to make the balance available.

In any event the point is too doubtful and uncertain to authorize this Court to pronounce the Act of the Legislature unconstitutional. In holding that the Legislaature may use a part of the proceeds of the land granted to this State to make the remainder available, we refer to other lands than the 90,000 acres granted to establish an agricultural or mining college. So far as these 90,000 acres are concerned, the Legislature, by the terms of its compact with the General Government, must provide the means from its ordinary sources of revenue to pay the expenses of selling the same and investing the proceeds in bonds. In the mean time the State may select all its other lands, and the cost of selecting and selling those lands, the proceeds of which, when sold, go into the school fund, may be paid by warrants drawn on and payable out of the common school fund.

A peremptory writ of mandamus will issue.

JOHNSON, J., did not participate in the foregoing decision.