[No. 1259.]

THE STATE OF NEVADA ex rel. S. H. WRIGHT, Relator, *v.* W. C. DOVEY, SUPERINTENDENT OF PUBLIC INSTRUCTION, Respondent.

SCHOOL FUND—APPORTIONMENT OF—CHILDREN IN ORPHANS' HOME NOT TO BE COUNTED.—In the apportionment of the school fund as required by the constitution (art. 11, sec. 3), the wards of the state at the orphans' home should not be counted as a part of the children of Ormsby County, as their education is provided for by the state at the orphans' home, and they have not the right to attend the public schools.

APPLICATION for *mandamus.*

The facts are stated in the opinion.

*Trenmor Coffin* and *J. D. Torreyson,* for Relator:

*J. F. Alexander,* Attorney General, for Respondent:

By the Court, LEONARD, C. J.:

There are seven hundred and thirty-nine persons in Carson

school district No. 1, between six and eighteen years of age, of whom fifty are wards of the state in the orphans' home. In making his apportionment of the state school moneys to the county of Ormsby, respondent refused, and refuses, to include the said fifty wards among the persons entitled to be considered in the distribution of the public school moneys, and made said apportionment upon the basis of six hundred and eighty-nine persons between six and eighteen years of age in said district, instead of seven hundred and thirty-nine. Relator applies for a writ of *mandamus*, to compel respondent to make his apportionment upon the basis of the latter number.

The constitution of the state provides that the interest on school moneys shall be apportioned among the several counties in proportion to the ascertained number of the persons between the ages of six and eighteen years, in the different counties. (Const., art. 11, sec. 3.) Statutes have been passed, from time to time, providing for apportionment upon the same basis. It is the duty of the school census marshal to take annually, between the first and thirty-first days of May, inclusive, a census of all children under eighteen and over six years of age, who are residents of his district on the first day of May. He must include in his report all children of the district that are absent attending institutions of learning, and whose parents or guardians are residents of the district. He must not include non-resident children, who are attending, in his district, institutions of learning, benevolent institutions, such as deaf, dumb, blind, and orphan asylums, nor any other children not actually residing in the district. (Gen. Stat. 1314, 1317, 1318.)

In 1869 the legislature established, and caused to be erected, a state orphans' home, in Carson City, Ormsby County. (Stat. 1869, 111.) It is within Carson school district No. 1. Its administration is under the control of a board, consisting of the superintendent of public instruction, surveyor-general, and state treasurer. The board has power, among other things, to appoint a superintendent and matron, who shall be man and wife, and a teacher, *who shall reside at the home, and have charge of the educational department;* said teacher to be duly qualified according to the provisions of the state school law. The board has power, also, to employ all other suitable persons necessary to conduct the affairs of the home. All children admitted to the

state orphans' home must, under the direction of the board of directors, be taught the usual branches of an English education, and the male orphans must be taught useful trades and occupations, and engaged in useful employments, as the board of directors shall order.    The female orphans must be taught the useful occupations of housewifery, and such other useful occupations as the board of directors may provide.    All orphans duly admitted to the home thereby become wards of the state, and are entitled, under the provisions of the statute, to the care, protection, and guardianship of the state.    For such care, protection, and guardianship the state is entitled to the services of its wards, and has the right to train and educate them for useful places in society, and such rights of the state are superior to the claims of any and all relations or persons, resident or non-resident.    (Gen. Stat. 1465, 1466, 1469, 1471.)

Under the law as it now stands, the legislative intent to educate the orphans at the home, and not in the public schools, is plain.    By the method of education adopted and prescribed by the legislature, these wards are as thoroughly withdrawn from the public schools as they would be if they were to be sent to another state to be educated.    They are not to be sent to the common schools, there to pursue the studies prescribed by the state board of education, but they are to be taught the usual branches of an English education at the home, under the direction of the board of directors.    Under the statute, it is as much the duty of the board of directors to educate the orphans under their charge, both before and after they are six years of age, as it is to clothe or feed them, and to that end to appoint a teacher, who must reside at the home, and have charge of the educational department, as it is to appoint a superintendent and matron.    The specific mention of the method of education to be pursued excludes the idea that the board are at liberty to adopt any other.

Upon this question our conclusion is that, under the law now existing, these wards must be taught at the home by a teacher who resides there, and that they are not entitled to attend the public schools of Carson City, or any others, so long as they remain inmates of the home.

Having arrived at the conclusion just stated, is it the duty of respondent to include or exclude the wards in question in making his apportionment?    We freely admit that the language

of the constitution and statute is broad enough to sustain relator's claim that they should be included; but it does not necessarily follow from that fact that persons in their situation were intended to be included, either by the framers of the constitution or the legislature. In construing constitutions and statutes, the first and last duty of courts is to ascertain the intention of the convention and legislature; and in doing this they must be governed by well-settled rules, applicable alike to the construction of constitutions and statutes. "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law, in such cases, should prevail over the letter." ( U. S. v. Kirby, 7 Wall. 482. And see State v. McKenney, 18 Nev. 189; State v. Kruttschnitt, 4 Nev. 178.)

It was the intention of the framers of the constitution, and of the legislature, to make as equitable and equal division of the public school moneys as possible, and the method of division adopted was not an arbitrary one. It was based upon reason and justice. The controlling thought was to give to each county an equal sum for each child in the county entitled to attend and enjoy the public schools; and the principal object in taking the census at the same time in all the districts is to ascertain the number of such children, in order that an equal division of a common fund may be made. If two counties have an equal number of children entitled to attend the public schools, reason and justice demand that they shall share equally in the public funds; but if one has not only the same number as another, who are so entitled, but fifty more also, who are prohibited from attending, no reason can be given for including the fifty in the apportionment. They are no tax upon the public school fund. The school is not affected by them. It would be the same if they did not exist, or if they resided in a foreign country; and it would be as unjust and unreasonable to allow a district to receive money because of their residence therein, as it would to permit an equal sum to be given by reason of the same number of adults residing there. Tribal Indian children have not been returned by census marshals, or considered by superintendents of public instruction in making their appor-

Points decided.

tionment, for the reason, doubtless, that they have not been considered entitled to enjoy the privileges of public schools; because, in all other respects, they are within the constitution and statutes. Now, if the reason stated is the true one—if they are not entitled to attend the public schools—then it would be just as reasonable, and as much within the letter and spirit of the constitution and statutes, to allow Ormsby, or any other county, to draw public school moneys on account of the numerous Indian children within its limits, at least without previous legislative action, as it would be to permit the same to be done in case of the orphan children at the home, who are likewise prohibited by existing laws from attending the public schools. If we stick to the letter of the constitution and statutes, instead of the reason of each, then census marshals must return Indians like other children, and superintendents of public instruction must consider them in making their apportionments. On the other hand, if we adhere to the reason of the law, then, if Indian children are not entitled to public school privileges, superintendents should not include them in making their apportionments.

Our opinion is that neither the framers of the constitution nor the legislature intended to allow public school moneys to any county for persons not entitled to attend the public schools therein, and that under existing laws, the children of the orphans' home are not so entitled.   *Mandamus* denied.