[No. 1501.]

STATE OF NEVADA, EX REL. FLORENCE M. KEITH, RELATOR, v. W. J. WESTERFIELD, STATE TREASURER, RESPONDENT.

CONSTITUTIONAL LAW—GENERAL SCHOOL FUND—PAY OF TEACHERS IN STATE ORPHANS' HOME.—Sections 2 to 6 of article XI of the constitution provide that the legislature shall provide for a uniform system of common schools, by which a school shall be established and maintained in each school district six months in each year; that the proceeds derived from designated sources are "pledged for educational purposes, and shall not be transferred to any other fund for other uses, and shall be, from time to time, apportioned among the counties"; that the legislature shall provide for the investment of all proceeds derived from said sources in certain kinds of bonds; that the interest only "shall be used for educational purposes, and any surplus shall be added to the principal sum; *provided*, that such portion of said interest, as may be necessary, may be appropriated for the support of the state university"; that the legislature shall establish such university, and may establish normal schools and such different grade of schools, from the primary department to the state university, as it deems necessary; and that it shall provide a special tax, not exceeding two mills, in addition to the other means provided, for the support of said university and common schools: *Held*, that the wards of the state at the orphans' home are not included in the general school system of the state, and that no part of the general school fund can be appropriated to pay teachers at the state orphans' home, and that section 34 of the statutes of 1897 (page 82), in so far as it attempts such appropriation, is void.

IDEM—STATUTE, UNCONSTITUTIONAL IN PART, NOT ENTIRELY VOID.—A law passed by the legislature, constitutional in part, but unconstitutional as to some of its provisions, will be sustained so far as it is constitutional, unless the whole scope and object of the law is defeated by rejecting the objectionable features.

IDEM—PAY OF TEACHERS AT ORPHANS' HOME—GENERAL FUND OF STATE.— Section 1 of the statutes of 1897 (page 82) provides that the following sums are appropriated "for the purposes hereinafter named, and for the support of the state government for the fiscal years 1897 and 1898: For the salary of the governor, $8,000." Forty other sums are named for as many purposes, without designing any fund. Section 34 reads: "For the salary of one teacher and one assistant teacher at the state orphans' home, $2,400, payable out of the general school fund": *Held*, that, though the last clause of section 34 is in conflict with the constitution and void, the remainder of the section is not affected by such fact, and makes a valid appropriation out of the "general fund" in the state treasury.

ORIGINAL PROCEEDING. Application by the State, on the relation of Florence M. Kieth, for a writ of *mandamus* to compel W. J. Westerfield, State Treasurer, to pay a warrant in relator's favor, drawn by the State Controller.

The facts sufficiently appear in the opinion.

*J. Poujade* and *G. W. Keith*, for Relator:

I.   The primary object of our constitution in regard to education is to provide an education for all the children of the state.   It excludes no class.   The very foundation of our system of government is the equal treatment of all.

II.   The children may be divided into classes, as for age, sex, color or other conditions.   No class can be excluded. Necessarily the orphans have been separated into a class, and a class in which they cannot receive their portion of the school funds in the ordinary way.   (*Stoutmeyer* v. *Duffy*, 7 Nev. 342; *State* v. *Dovey*, 19 Nev. 396.)

III.   The school at the orphans' home is a common school in the constitutional sense.   If the convention failed to specify it by name, it was merely in order that the legislature might provide for it as the exigencies of the case might require, or else it was such an omission as the legislature should supply.

IV.   Section 5 of article XI of the constitution provides for every kind of school in whose benefits the whole people participate.   This is such a school.

*Wm. Woodburn, A. J. McGowan* and *James R. Judge*, Attorney-General, for Respondent:

I.   No part of the money of the general school fund of the state treasury can be used for the payment of salaries of teachers in the state orphans' home.   (*State* v. *Dovey*, 19 Nev. 396.)

II.   The money in the general school fund can only be used for purposes connected with the educational system of the state.   (Const. Nev., sec. 3, art. XI; *State* v. *Dovey*, 19 Nev. 396.)

III.   The school at the state orphans' home is no part of the educational system of the state, nor was it intended to be.   The management provided therefor is distinct and separate from the educational department of the state.   It is not under the control of the superintendent of public instruction, the superintendent of public schools in the county in which it is situated, nor is it subject to control or supervision other than that provided by the legislature in placing it in

charge of the board of directors of the state orphans' home, which board is in no manner or way connected with the educational system of the state. (*In re Malone's Estate*, 21 S. C. 451; *People* v. *Board Education Brooklyn*, 13 Barb. 410; *Atkin* v. *Lamkin*, 56 Miss. 764.)

By the Court, BONNIFIELD, J.:

The relator brings this action to compel, by writ of *mandamus*, the respondent, as state treasurer, to pay a certain warrant drawn in her favor by the state controller for the sum of $45 in payment of her salary for the month of April last, as assistant teacher at the state orphans' home. The warrant was drawn on, or made payable out of, the general school fund, pursuant to the terms of the act making an appropriation for the payment of the salaries of the teachers at said home, passed at the last session of the legislature. (Stats. 1897, 82.)

The question of the constitutionality of said appropriation is raised by the pleadings. The contention of counsel for respondent is, in effect, that the moneys belonging to the general school fund, in contemplation of the constitution, can be used only for the support of the common schools and the state university, and not for any purposes of the state orphans' home. Counsel for relator argues to the effect that, as the constitution pledges these moneys for educational purposes for the benefit of all the children of the state, the appropriation of a due proportion of it for the payment of the teachers at the state orphans' home is permissible under the terms of the constitution; that such use of it is applying it to educational purposes, and that no child can be properly deprived of the benefits of said moneys by reason of its being placed in said home, and that the educational department of said home may properly be considered a part of the common school system.

As we view the terms of the constitution, and the former decisions of this court, we do not think the above contention is tenable, on the part of relator.

Article XI of the constitution provides " that the legislature shall provide for a uniform system of common schools, by which a school shall be established and maintained in

each school district at least six months in every year"; that
the proceeds derived from certain designated sources "shall
be, and the same are hereby, solemnly pledged for educational
purposes, and shall not be transferred to any other fund for
other uses, and shall be, from time to time, apportioned
among the counties"; that the legislature shall provide for
the investment of all proceeds derived from any of said
sources in certain kinds of bonds; "that the interest only of
the aforesaid proceeds shall be used for educational purposes,
and any surplus interest shall be added to the principal sum;
*provided,* that such portion of said interest as may be neces-
sary may be appropriated for the support of the state univer-
sity"; that the legislature shall provide for the establishment
of a state university, which shall embrace departments for
agriculture, mechanical arts and mining; that the legislature
shall have power to establish normal schools and such differ-
ent grades of schools, from the primary department to the
university, as in their discretion they may deem necessary,
and that the legislature shall provide a special tax, which
shall not exceed two mills on the dollar of all taxable prop-
erty in the state, in addition to the other means provided for
the support and maintenance of said university and common
schools.

The educational system of this state consists of the above-
named departments of education, and the above provisions
are made for the support of this system, or these departments.

In *State* v. *Rhoades,* 4 Nev. 312, the court held "that sec-
tion 3 of article XI of the constitution prohibits the legisla-
ture from using the funds arising from the sale of the public
lands, which were granted for educational purposes, for any
other branch of state expenditure, except that immediately
connected with the educational system, but (that) it does not
prohibit the use of a part of the trust estate for the purpose
of making the rest available."

The above construction of said section 3, that the legisla-
ture is prohibited from using the funds arising from the sale
of lands which were granted for educational purposes for any
other branch of state expenditures, except that immediately
connected with the educational system, except, etc., is
applicable to all moneys arising from the proceeds from the

several sources named in said section, whether it be principal or interest, as all such moneys or funds are, by the same terms, included in the prohibition.

In *State* v. *Dovey*, 19 Nev. 396, the court held: "In the apportionment of the school fund as required by the constitution (art. XI, sec. 3) the wards of the state at the orphans' home should not be counted as a part of the children of Ormsby county, as their education is provided for by the state orphans' home, and they have not the right to attend the public school."

It was clearly the opinion of the court in that case that the educational department of the state orphans' home was foreign to the educational system of the state, as provided for by said article XI; that the apportionment of the school moneys required by the constitution to be made among the several counties could in no manner be affected by anything pertaining to said home, and that the wards of the state in said home had no interest in said moneys, and that they could not be considered in connection therewith. The court said: "The controlling thought was to give to each county an equal sum for each child in the county entitled to attend and enjoy the public schools"; that the children in the orphans' home were not entitled to attend the public schools; that "they are no tax upon the public school fund; that the school is not affected by them. It would be the same if they did not exist, or if they resided in a foreign country."

It is true that if a portion, or all, of these moneys were appropriated to the education of the children in said home, it would be applying them to educational purposes; but the constitution does not include the education of these children in the term "educational purposes." The constitution requires the interest derived from the said several sources to be apportioned among the counties, except such part as the legislature may deem necessary for the support of the state university. The special tax required to be levied as above named is for the support of said university and common schools. The said interest, and the proceeds of said tax, constitute the general school fund. Then, certainly, no part of this fund can be used to pay the warrant of relator in

question, without disregarding the mandates of the constitution.

We are of opinion, upon reason and the above authorities, that the appropriation made by the legislature for the payment of the salaries of the teachers at the state orphans' home, in so far as the same is made payable out of the general school fund, is unconstitutional, null and void, and it follows that the warrant in question, in so far as it is made payable out of said fund, by the terms thereof, is null and void. But it does not follow that said appropriation or said warrant, or either of them, is otherwise null and void. We hold that the legislature has made a valid appropriation for the payment of the salary in question, and that the same is payable out of the general fund in the state treasury the same as the salary of the governor and most of the other state officers, and the same as other appropriations in which no specific fund is named. Section 19 of article IV of the constitution provides: " No money shall be drawn from the treasury but in consequence of appropriations made by law." It will be observed that it is not required that the fund out of which the appropriations are to be made shall be named in the appropriation act. Usually, if not always, other acts, or the constitution, show what fund the money appropriated is to be drawn from.

Section 1 of the said act of 1897 appropriates various sums for different purposes. It reads: " The following sums of money are hereby appropriated for the purposes hereinafter named, and for the support of the government of the state of Nevada for the fiscal years 1897 and 1898," and then follows: "For the salary of the governor, eight thousand dollars," and forty other sums are named for as many different purposes without designating any fund.

" Sec. 34. For salary of one teacher and one assistant teacher at the state orphans' home, twenty-four hundred dollars ($2,400), payable out of the general school fund."

The last clause of this section is null and void, for the reasons hereinbefore given. But it does not invalidate said section 1, nor the balance of said section 34.

Cooley, in his Constitutional Limitations, says: " It will sometimes be found that an act of the legislature is opposed

in some of its provisions to the constitution, while others, standing by themselves, would be unobjectionable. * * * Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall." See cases cited by Cooley. "If a law be passed by the legislature, constitutional in part, but unconstitutional as to some of its provisions, that which is constitutional will be sustained, unless the whole scope and object of the law is defeated by rejecting the objectionable features." (*State* v. *Eastabrook*, 3 Nev. 173; *Evans* v. *Job*, 8 Nev. 322; *Rosenstock* v. *Swift*, 11 Nev. 129.) The numerous other authorities which hold to the same effect need not be cited.

It seems to us that it cannot be reasonably inferred that the appropriation for said salaries, and the designation of the fund out of which the same should be paid, are so dependent on each other that the legislature would not have made the appropriation without making the salary payable out of said fund. The main object of the legislature was to provide for the payment of said salary, and, for some reason, they thought it advisable to have the payment made out of that fund. It is evident to our mind that the legislature would have as readily made the appropriation out of the proper fund if it had occurred to the members that it could not properly be made out of the general school fund.

We therefore conclude that there is a valid appropriation made for the payment of said salary out of what is known as the "general fund" in the state treasury, and that it is the duty of the state treasurer, the respondent, to so pay said salary and said warrant.

We understand that the respondent objects to paying said warrant out of the general school fund, and was not aware that he could pay it out of any other fund under the terms

of said appropriation.    We do not deem it necessary to make any order in this case at this time, as the respondent will undoubtedly pay said warrant as indicated in this opinion.