. [No. 2053] .

## THE STATE OF NEVADA, EX REL. C. A. NORCROSS, AS COMMISSIONER OF INDUSTRY, AGRICULTURE AND IRRIGATION, PETITIONER, *v.* JACOB EGGERS, STATE CONTROLLER, RESPONDENT.

1. STATUTORY CONSTRUCTION — APPROPRIATIONS — GENERAL FUND— SALARY OF OFFICER.

In the absence of anything to the contrary in the statute, the act of March 17, 1911, sec. 6 (Rev. Laws, 4491), fixing the salary of the commissioner of industry, agriculture, and irrigation, and directing that it be payable in equal monthly installments by the state treasurer on warrants drawn by the state controller, is a sufficient appropriation out of the state general fund.

2. STATUTORY CONSTRUCTION—APPROPRIATION—SPECIAL FUND—SALARY OF OFFICER—STATUTES—"PURPOSES."

The act of March 17, 1911, sec. 7, part of the act (Rev. Laws, 4486–4494) creating the state bureau, and the office of commissioner of industry, agriculture, and irrigation, and defining its objects and purposes, does not, by section 7, appropriating $25,000 to carry out "the purposes of this act," and providing that all disbursements from it shall be on certificate of the commissioner, approved by the state board of examiners, indicate that such appropriation includes the salary of the commissioner, which section 6 fixes and declares payable in equal monthly · installments by the state treasurer on warrants drawn by the state controller; Const. art. 5, sec. 21, expressly excluding salaries of officers "fixed by law" from the claims against the state which the board of examiners shall pass on, and "purposes" indicating something to be accomplished rather than an existing fact, so that the bureau and office of commissioner were but means for the subsequent accomplishment of the purposes of the act:

ORIGINAL PROCEEDING for *mandamus* by the State, on the relation of C. A. Norcross, as Commissioner of Industry, Agriculture and Irrigation, against Jacob Eggers, as State Controller. **Writ granted.**

The facts sufficiently appear in the opinion.

*Summerfield & Richards*, for Petitioner:

The salary of the commissioner of industry, agriculture and irrigation, created under the provisions of the act of March 17, 1911 (Rev. Laws, 4486–4494), is payable out of the general fund in the state treasury, and not out of the special fund created by section 7 of the above act.

The appropriation made by section 7 is a specific appropriation "to carry out the purposes of the act" as those purposes are set forth and defined in section 4.

By reference to the title of the act it appears that the act, in addition to creating the office of commissioner and fixing his compensation, makes an appropriation of "funds for its [bureau of industry, etc.] support and maintenance and to carry out its objects and purposes." It must be borne in mind that the bureau and the commissioner are not one and the same.

If section 7 did not appear in the act, then unquestionably section 6, which fixes the salary of the commissioner and directs that the same be payable "in equal monthly installments by the state treasurer on warrants drawn by the state controller," would be a sufficient appropriation out of the general fund, under the rule laid down by this court. (*State* v. *Eggers,* 29 Nev. 469; *State* v. *Westerfield,* 23 Nev. 473.)

Section 6 fixes the method of payment of the salary of the commissioner direct, but all payments out of the appropriation created in section 7 must be on certificate of the commissioner and approval of the board of examiners. There is no reason why the commissioner should certify to his salary, and the board of examiners can have nothing to do with salaries of officers fixed by law. (State Constitution, art. 5, sec. 21; Rev. Laws, 314, 4459.)

The language of section 7 shows that only unliquidated claims were intended to be paid out of the appropriation therein made.

Creating the office of commissioner and fixing his salary was not a "purpose" of the act, but an incident antecedent to such "purpose," which purposes the title of the act stated would be defined and which were specifically defined in sections 3 and 4.

No legislative intent can be drawn from the fact that the general appropriation bill did not contain an appropriation for the salary of the commissioner. Fixed salaries are not required to be included in the general appropriation bill. An act creating an office and fixing

a salary of itself makes a continuing appropriation. When the general appropriation bill was passed, the bill creating the bureau of industry was not yet a law.

It has always been the contention of the commissioner that his salary was not payable out of the appropriation of $25,000, which was intended by the legislature as a fund to be used in carrying out the objects and purposes of the act. This contention is in accordance with the public understanding at the time the act was passed. (Citing *Nevada State Journal* of March 16 and 23, 1911.) It is proper, we think, to observe that if the legislature did not understand that the appropriation in section 7 was in addition to the salary of the commissioner, the newspaper reporter would not likely have gathered that idea.

*G. B. Thatcher*, Attorney-General, for Respondent:

In the construction of statutes the intention of the legislature is the end to be attained, and such intention when plainly evidenced will prevail. As indicating the legislative intent the inquiry is pertinent: If the legislature did not intend that the salary of the commissioner should come out of the $25,000 appropriation, why did it not make an appropriation for the same as for all other state officers in the general appropriation bill? The fact that it did not make such an appropriation, and the fact that it did provide an appropriation of $25,000 in the section immediately following that in which the salary of the commissioner is fixed, proves conclusively that it was the intention of the legislature to have the salary of the commissioner paid out of the latter appropriation, upon the principle that "*expressio unius est exclusio alterius.*"

"A statute," it has been said, "is to be construed, if possible, so as to give sense and meaning to every part; and this maxim was never more applicable than when applied to the interpretation of a statute." (Broome's Legal Maxims, p. 514.)

Having made an appropriation "to carry out the purposes of this act," it cannot be said that it was the

intention of the legislature to imply an appropriation for the payment of the commissioner's salary.

To maintain his claim of such concealed and implied appropriation, petitioner relies wholly upon the exception in section 21 of article 5 of the constitution (Rev. Laws, 314) and upon that portion of section 4492 providing for disbursements "on certificates from the commissioner, approved by the state board of examiners." What is meant by the words "certificates of the commissioner"? The form used for claims against the state has printed at the bottom these words: "I hereby certify the foregoing bill to be just and correct," etc. The argument of petitioner therefore reduces itself to the proposition that because he is authorized by section 7 to sign his name to such certificate it has the magical effect of making an additional appropriation nowhere positively expressed in the act.

The word "purposes" in section 4492 is used in the sense of design, intent or effect, and the appropriation therein provided was to carry out the intent, design or effect of the act, one important purpose of which was the payment of the salary of the commissioner. It may be argued against petitioner's contention and with equal force that it was the intention of the legislature that the commissioner shall certify to disbursements for his own salary.

Because, where a salary is fixed by law and no appropriation made for its payment, an appropriation will be implied from the general fund (*Davis* v. *Eggers,* 29 Nev. 469), it does not follow that where a specific appropriation is made to carry out the purposes of a certain commission, an appropriation for the salary of the commissioner out of the general fund will be implied.

By the Court, SWEENEY, C. J.:

Relator, as the commissioner of industry, agriculture, and irrigation for the State of Nevada, has instituted the foregoing proceeding against respondent, J. Eggers, as state controller of the State of Nevada, for the purpose

of requiring respondent to issue and to deliver to the Carson Valley Bank as respondent's assignee two warrants upon the state treasurer of the State of Nevada, payable out of the general fund in the Nevada state treasury, for the sum of $300 each in course of payment of the relator's salary for the months of October and November, 1912.

It is relator's contention that, under the provisions of law, his salary is payable out of the state general fund, in which there are sufficient funds otherwise unappropriated to pay the same, while it is respondent's contention that relator's salary is payable only out of the appropriation made in the legislative act creating relator's office, and that, said appropriation being exhausted, there is no fund in the state treasury against which respondent can legally draw the demanded warrants for relator's salary. It is stipulated between counsel that there are no disputed evidentiary facts, and the sole question for us to determine is whether relator's salary is legally payable out of the state general fund.

If the court answers this question in the affirmative, the mandate asked should issue, but otherwise it should be denied.

The act in question is entitled "An act creating and establishing a Nevada bureau of industry, agriculture and irrigation, providing for a commission in charge thereof; creating the office of commissioner of industry, agriculture and irrigation and fixing his compensation; defining the objects and purposes of said bureau, prescribing the powers and duties of said commission; appropriating funds for its support and maintenance and to carry out its objects and purposes, and other matters relating thereto," approved March 17, 1911. (Rev. Laws, 4486–4494.)

Section 1 of the above-entitled act in part provides: "That there is hereby created and established a Nevada bureau of industry, agriculture and irrigation. Said bureau shall be governed and controlled by a commission which shall be designated as state commission of industry,

agriculture and irrigation, and shall be composed of five members, four of whom shall be ex officio members, namely: The governor, the surveyor-general, the attorney-general, and the state engineer, and one other member to be appointed by the governor, the office of which is hereby created, who shall be entitled commissioner of industry, agriculture and irrigation.   *   *   * "

Section 2 provides when the term of office of the commissioner shall begin, and that he shall hold office at the pleasure of the governor.

Section 3 provides for meetings of the commission, and that "no expenditure shall be made or expense contracted without it be authorized by a majority vote at such meeting," etc.

Section 4 specifically defines the "general and special powers, duties and functions of said commission," which are set forth in six subdivisions, and includes the gathering and disseminating of information relative to the resources of the state, the conducting of "reasonable and practicable explorations and experiments to determine the feasibility of reclaiming favorable portions of the state, the control of the selection, management and disposal of all lands granted the state under the provisions of the act of Congress   *   *   *   known as the Carey Act," and other matters of a kindred nature.

Section 5 provides that the commission may accept certain contributions which shall go into a special fund in the state treasury "called industrial commission fund," and that boards of county commissioners may, in their discretion, make appropriations from the county treasuries "to meet in part the cost or expense of any exploration or experimental work conducted in such county."

Section 6 provides: "Said commissioner shall receive a salary of three thousand six hundred dollars per annum, payable in equal monthly installments by the state treasurer on warrants drawn by the state controller. The members of said commission when engaged in field work or delegated to special duty shall be entitled to actual

traveling, living and other necessary expenses, which shall be audited by the commission and on the certificate of the commissioner, approved by the state board of examiners, shall be paid by the state treasurer on warrants of the state controller, out of any moneys in the treasury available therefor."

Section 7 provides: "There is hereby appropriated to carry out the purposes of this act, the sum of $25,000, and all disbursements from which, as well as from the said industrial commission fund, shall be on certificates of the commissioner, approved by the state board of examiners, when the state controller shall draw his warrant and the state treasurer pay the same."

Section 8 provides for certain printing, and section 9 contains certain penal provisions.

It is the contention of respondent that the salary of the commissioner is payable out of the $25,000 appropriated under the provisions of section 7 above quoted, while relator contends that that fund is specifically appropriated "to carry out the purposes of the act," as those purposes are set forth and defined in section 4 of the act. By a reference to the title of the act, it appears that the act, in addition to creating the office of commissioner and fixing his compensation, makes appropriation of "funds for its (Nevada bureau of industry, agriculture and irrigation) support and maintenance and to carry out its objects and purposes." It must be borne in mind throughout the interpretation of this act that the commissioner and the bureau are not one and the same. The bureau is governed by a commission of five members, one of whom is the commissioner, "who shall keep his office in said bureau." (Section 3.)

[1] If section 7 did not appear in the act then unquestionably section 6, which fixes the salary of the commissioner and directs that the same be payable "in equal monthly installments by the state treasurer on warrants drawn by the controller," would be a sufficient appropriation out of the general fund under the rule heretofore laid down by decisions of this court. (*State*

v. *Eggers,* 29 Nev. 469, 16 L. R. A., N. S., 630; *State* v. *Westerfield,* 23 Nev. 473.)

[2] There is no specific provision in section 7 that the salary of the commissioner shall be paid out of the $25,000 therein appropriated, but there is a provision that "all disbursements from which * * * shall be on certificates of the commissioner, approved by the state board of examiners." If, then, the commissioner's salary is payable out of this fund, then the commissioner must first certify to his salary, and submit the same to the board of examiners, and have the latter board approve the same before the controller may draw his warrant. But section 6 says the "commissioner shall receive a salary of three thousand six hundred dollars per annum, payable in equal monthly installments by the state treasurer on warrants drawn by the state controller." This latter section fixes the method of payment direct, independent of any certificate or approval of the board of examiners. The salary of the commissioner is a fixed charge against the state. There is no reason why the commissioner should certify to the same, and there is nothing for the board of examiners to audit and allow. The board of examiners have nothing to do with salaries of officers. Section 21 of article 5 of the constitution creates the board of examiners, "with powers to examine all claims against the state (except salaries or compensation of officers fixed by law)." (Rev. Laws, 314.) Such board, therefore, can have no power to examine, approve or disapprove fixed salaries of officers. Such claims as have been by law authorized, "but of which the amount has not been liquidated and fixed, may be presented to the board of examiners," is the language of the statute regulating the duties of the board of examiners. (Rev. Laws, 4459.) This is in accord with the constitution. It is not to be presumed that the legislature intended to require the board of examiners to approve a fixed claim for salary, when the constitution expressly takes that class of claims out of the consideration of such board. Since

section 7 provides that all payments from the $25,000 must be approved by the board of examiners, the only logical deduction is that disbursements from that fund must all be of the character which the board of examiners are authorized and required to approve. As they are not authorized or required to approve the salary of the commissioner, it follows that such salary was not intended to have been paid out of such appropriation. There is nothing in the language of section 7 which indicates an intent on the part of the legislature that the appropriation of $25,000 should include the salary of the commissioner, while as before pointed out, there is language used manifesting a contrary intent. The word "purposes" indicates something to be accomplished rather than an existing fact. See Webster, Words and Phrases. The purposes of the act are defined therein. The creation of the bureau and the office of commissioner were accomplished the moment the act went into effect. They were but means for the subsequent accomplishment of the purposes of the act. If the legislature had intended that the $25,000 appropriated by section 7 should include salaries, instead of using language negativing such intent, it would have used language manifesting such intent, as it did in the case of the act in relation to banks and banking and creating the office of state bank examiner and fixing his salary, which act was passed at the same session of the legislature. Section 78 of the latter act (Rev. Laws, 693) provides: "For the purpose of carrying this act into effect and paying the salaries and expenses herein provided for and incident thereto, the sum of twenty thousand dollars is hereby appropriated out of the state treasury."

In reviewing the entire act under consideration and in the light of the law and authorities submitted, we are of the opinion that relator is entitled to his salary from the general fund. Let the writ issue as prayed for.

Talbot, J.: I concur.

Norcross, J., deeming himself disqualified, did not participate in the foregoing decision.