## LOWDEN et al. v. CADDO COUNTY EXCISE BOARD.

No. 26308.     March 3, 1936.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for plaintiffs in error.

Amos Stovall, for defendant in error.

WELCH, J. This appeal from the Court of Tax Review seeks to reverse that court's order overruling certain tax protests relating to the general fund of six separate school districts in Caddo county for the fiscal year 1934-35.

On October 6, 1934, the excise board of Caddo county filed with the State Auditor, as provided by law, the complete appropriation and tax levies for these school districts. No protest concerning same was made within 40 days from the filing thereof. On December 21, 1934, the excise board, joined by the county attorney, presented to the Court of Tax Review its motion for permission to withdraw the budgets and levies for the purpose of increasing the appropriations. This motion was presented before that court had heard any of the Caddo county protests for that year. This motion was granted, and the budgets and levies were withdrawn, the increase made and the same were refiled on December 26, 1934. Upon refiling of the budgets and levies the same were redocketed and renumbered by the State Auditor, the same as an original filing.

On January 9, 1935, the protestants here filed their protests, which we now have under consideration. The sole basis of the protest is the contention that the budgets and levies filed on October 6, 1934, having remained on file for a period of 40 days without withdrawal by the excise board, the same could not thereafter be withdrawn for the purpose of increasing the appropriations, and therefore became final and exclusive.

The trial court in denying the protest held as follows:

"* * * We have discussed your argument and examined the authorities submitted, and in view of the fact that error was evidently made in the estimate and the further fact that leave was given by the court to withdraw the estimates and make the corrections and refile them under a new number and giving any persons who were aggrieved 40 days from that date, time within which to protest, we do not feel that the protestants in this case have anything more than a technical objection or have been in any way aggrieved,—they have no vested rights that have been affected, and the court finds that the protest should be overruled, and so ordered."

The protestants call particular attention to that part of section 12306, O. S. 1931, as follows:

"If no protest is filed by any taxpayer as to the levy of any county or municipal subdivision thereof within said 40-day period

all appropriations and levies of said county and municipal subdivisions thereof not protested shall be deemed to be legal, and all proceedings for refunds or suits for refunds or recovery of taxes or to contest the validity thereof in any manner shall be barred."

And they assert that thereunder the excise board is precluded after the 40 days therein named has expired from increasing appropriations theretofore made, or making additional appropriations, or from increasing the tax levy.

We find no such prohibition therein contained. The office of the quoted statutory provision is to limit the time on the part of the taxpayer in which protests may be filed against the appropriations or tax levies theretofore made. Thereunder, according to the facts here, the budget and levy filed by the excise board on October 6, 1934, levying 4.88 mills and appropriating $7,265.20 became final and legal at the end of the 40-day period, in the sense that no protest against legality thereof could be made in the Court of Tax Review, the time therefor having expired. The quoted provision is essentially a limitation of time for the filing of tax protests against illegal levies.

Our attention is directed to the last paragraph of section 12306, supra, which provides as follows:

"The excise board may reconvene at any time within 60 days after the filing of the budgets and levies with the State Auditor and reduce any protested budgets and levies which the excise board deems to be illegal."

It is urged that here is found the only authority appearing in the act, which is a portion of Initiative Petition No. 100 adopted August 7, 1928, providing specifically for the reconvening of an excise board for any purpose, and that under the maxim designatio unius est exclusio alterius, the excise board is precluded from acting in any other manner.

We do not agree with such suggestion. The paragraph of the statute under consideration has a very useful purpose when considered in connection with the preceding provision of the same section. As we have pointed out, this same section of the statute provides that an appropriation and levy become legal after 40 days from its filing if no protest is filed. Section 12315, O. S. 1931, is a legislative amendment to the initiative act defining specifically what appeared to be the general intent of the act in the first instance, to the effect that when a protest is filed and thereby the legality of an appropriation or levy is put in issue, the appro-

priation or levy will not become legal by virtue of the expiration of the 40-day period, but its status as to legality then depends upon final determination of the tax protest, unless the question is sooner determined by correction by the excise board to remove the question. It will thus be seen that by virtue of the last-quoted paragraph of section 12306, supra, in the case of a protest which the excise board might recognize as being meritorious, such board is thereby authorized within a 60-day period to reduce an appropriation or levy in accordance therewith, and in such manner avoid a possible delay in awaiting the action of the Court of Tax Review, and permit the local officials to proceed in the conduct of the municipal affairs without such possible delay. In the absence of such provision, protest might be filed putting in issue the entire appropriation for a municipality, causing delay pending final determination of the issue in the courts, when with this provision the issue could be disposed of by the excise board in reducing the appropriations and levies in conformity with a valid and justified protest. It is to be seen from the act itself, and particularly from section 12306, supra, that the same does not purport to grant authority generally to the excise boards, or to deal expressly with that board's power to properly withdraw the levies and budgets. It does, however, specifically provide that such appropriations and levies, if not protested, shall become legal and free from protest at the end of 40 days after filing. It provides for the filing of protests, which when filed would necessarily give the Court of Tax Review jurisdiction to examine into the appropriations and levies, and which would in effect pass the questioned items to the judges of the Court of Tax Review for consideration and judgment. Such a situation then should doubtless operate to restrict the free right of the excise board, without permission of that court, and for any reason the board deemed proper, to withdraw and change the budgets. However, even in such a situation the act, by the terms of the last-quoted provision of section 12306, supra, specifically gives the excise board power and authority over the appropriations and levies to the extent of permitting it to reduce the same in accordance with the protest, if the protest appears to be meritorious, thus providing a prompt method for disposing of the controversy and releasing the remaining appropriations for needful use by the municipal officers.

We, therefore, conclude that the last para-

graph of section 12306, supra, is intended only as a specific grant of power which probably had otherwise been excluded by the provisions of the same paragraph of th' act, and that the same was not in any wise employed in the act for the purpose nor with the idea of controlling or restricting the excise board in its general powers with which it may have been otherwise clothed.

So it is our conclusion that the statutory provisions which we have considered did not in any wise exclude the excise board from exercising the attempted authority and control over the budgets and the making of the appropriations and levies here shown. Nor is there thereby fixed a time limit after which the excise board is excluded from a consideration of the municipal budgets and levies for such purpose.

Let us then consider the power and authority of the excise boards which may be exercised in such matters. It is obvious that various statutes on the subject give the excise boards authority to convene and to consider the financial statements and the estimated needs of the various municipal subdivisions for each fiscal year. These laws generally provide when the meetings shall be held. It requires but slight familiarity with the various statutory provisions in connection therewith to demonstrate to every one that it is sought thereby to promote the completion of the appropriations and levies at as early a date as possible upon the beginning of the new fiscal year, after which ad valorem tax levies made thereby are spread upon the rolls and the collection of taxes is begun with dispatch. The various financial statements and estimates of needs are filed with the clerk of the excise board. The board then considers the same and in so doing its duties are rather strictly fixed by statutory law.

Under the facts in the instant case it was the duty of the excise board in considering the budgets of the several school districts here involved to appropriate greater amounts for the use of the school districts than it did appropriate by its original action. Its duty therein was plainly fixed and mandatory, and was such a duty as might have been, and frequently has been, compelled by mandamus. Through error, or otherwise, the excise board fixed certain appropriations therein and certain tax levies therein at a lesser amount than it was its legal duty to do. Had the excise board within the course of one, two, or three days, or within the course of the 40-day period, either voluntarily or by order of a court of competent jurisdiction sought to withdraw these appropriations and levies, we have no doubt that the same still remained subject to such withdrawal for that purpose, that is, to correct them and thereby do that which the board should have done in the first instance. We know of no reason which would prevent them from so doing, unless it would be by specific statutory inhibition. The excise board, however, did not withdraw the appropriation budgets and levies within a few days' time, nor within the 40-day period, nor even within the 60-day period. What then was its duty and power in the circumstances? We have already shown that as to the appropriations and levies shown by the original filing, they had become fixed and conclusively legal as to any protest against legality at the end of the 40-day period, by virtue of the provisions of section 12306, supra. Could the board then after the 40-day or 60-day period withdraw the same for any purpose? We are of the opinion that it can do so for the purposes here shown, unless it is specifically prohibited from so doing by statute, or unless its action in so doing will result in confusion and great public harm, or unless its action in so doing will operate as an invasion of the rights of the taxpayer. We have already shown that the statutory provisions relied upon by the protestants here do not prevent such action. No other statutory provisions are relied upon in this connection, and we know of none. We, therefore, take it that they may make the withdrawal for the purposes shown, there being no prohibitive statute.

We then consider whether the withdrawal for the purposes here, and at the time shown, was such as to cause great public harm and injury. Was there a reason of public policy preventing such withdrawal?

The parties to this action have chosen to present the case upon the theory that no such condition exists, and we think the method of presentation amounts to at least a tacit admission to this effect, and by reason thereof we hold in the instant case that the action taken by the excise board here did not result in public injury or confusion. We desire, however, to make it clear that we are mindful of the fact that the statutory enactments of this state on the whole contemplate and seek to obtain prompt and final action of the excise boards in making appropriations and levies, and unwarranted delays and tardy withdrawals for correction will always be scrutinized care-

fully to ascertain whether or not the public welfare is being best served thereby. We conceive it to be true that the authority and control over the budgets by the excise board, or the right to make changes therein, terminates when the time arrives that the withdrawal or disturbance thereof would operate to cause public confusion or harm or great public injury by virtue of the delay and uncertainty, as was noticed in Board of Education of City of Guthrie v. Excise Board of Logan County, 86 Okla. 24, 206 P. 517; Webster v. Morris, 129 Okla. 145, 264 P. 190, and Liberty Bank v. Excise Board of Jefferson County, No. 26122, decided October 8, 1935, 175 Okla. 245, 52 P. (2d) 51.

Let us now consider whether the action taken by the excise board here deprived the protestants of any statutory or constitutional right. From the time the budget was filed originally, to wit, October 6, 1934, which notified the defendant of a levy of 4.88 mills against its property within the school districts involved, and of specific appropriations totaling $7.265 20, the taxpayers had 40 days to protest any illegality therein; they did not so protest, and were therefore not injured. After these items of appropriations and levies had become legal or not subject to protests, the budgets and levies were withdrawn and additional appropriations and additional levies, admittedly legal, if not illegal on account of the time when they were made, were added thereto by the excise board. The budgets and levies containing the additions were refiled the same as an original filing, which was followed by new notice to the taxpayers the same as required in the first instance. There can be no doubt that the record shows that the taxpayers were then allowed 40 days' time within which to contest these additional appropriations and levies so that they might fully protect themselves from any wrongful levy or illegal appropriation, and we can see no reason why the taxpayer can have a valid complaint merely because the excise board performed its mandatory duty in the making of appropriations, although such performance was tardy.

Our attention is called to In re Chicago, R. I. & P. Ry. Co.'s Protest, 142 Okla. 242, 286 P. 316, wherein this court held:

"An excise board, after it has fixed the amount of the appropriation and computed the rates of levy and a protest has been filed with the State Auditor, has no authority to increase the amount of any appropriation, pending the hearing of the protest by the Court of Tax Review, and may do so only in the manner and form provided for the making of supplemental appropriations."

And it is said that the same is authority for the protestants' contention. It will be observed in that case that a protest had been filed. There had been none filed here. We have heretofore shown that the filing of a protest divested the excise board of control over the protested items, except for the purpose of reducing the appropriations and levies in accordance with the contentions of the protest when the board concludes the same to have been illegal.

In Re Chicago, R. I. & P. Ry. Co.'s Protest, supra, the excise board sought to act without any permission, and after the Court of Tax Review had acquired jurisdiction of the budgets and levies and the protest thereto. At that time the matter was pending in that court, and surely the conclusion therein was justified, that the excise board could not proceed to change the budgets as was there attempted. But it is equally certain that a far different situation is presented in the case at bar, and there is nothing in that case to direct us here to a conclusion that the action taken was erroneous.

We therefore conclude that the Court of Tax Review properly denied the protest to the corrected budgets and levies, and the judgment of the Court of Tax Review is therefore affirmed.

OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur. McNEILL C. J., and RILEY, BAYLESS, and GIBSON, JJ., dissent.