## GREER COUNTY EXCISE BOARD v. LOWDEN et al.

No. 26962. April 28, 1936.

Victor Waters, Co. Atty., for plaintiff in error.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for defendants in error.

WELCH, J. On October 16, 1935, the excise board of Greer county filed its 1935-36 county budgets with the State Auditor. There was included in this budget an item of $10,000 appropriated for the "construction of bridges" and financed by an ad valorem tax levy. This item appears not to have been properly itemized as provided by law, and protest on that ground was filed on November 18, 1935.

On December 2, 1935, the board of county commissioners of Greer county passed the following resolution:

"Whereas the board of county commissioners of Greer county, Okla., made a financial statement for the fiscal year 1934-35 and an estimate of needs for the fiscal year 1935-36, and filed the same with the excise board of Greer county, Okla., September 14, 1935, and

"Whereas, in above referred to estimate of needs for the county highway fund, in account No. 34, the county commissioners certified to the excise board a sum of $10,-000, listed for the purpose and reflected in said estimate for the construction of bridges, and

"Whereas, said $10,000 so listed as above set forth was not for the construction of bridges, but was in truth and fact, estimated for maintenance of roads and bridges:

"Whereas, the excise board of Greer county approved the above referred to $10,000 as requested and certified to them by the county commissioners;

"Therefore, the county commissioners request that the excise board reconvene for the purpose of correcting said estimate by striking the words 'Construction of Bridges' and (15) inserting the words 'Maintenance of Roads and Bridges.'"

On December 6, 1935, the excise board met and in pursuance of the aforesaid resolution of the board of county commissioners passed the following resolution:

"We, the excise board of Greer county, Okla., being in called session this 6th day of December, 1935, pass the following resolution:

"Be it resolved, by the excise board of Greer county, Okla., that the words 'Construction of Bridges' be stricken from the 1935-36 budget and the words 'Maintenance of Roads and Bridges' inserted in lieu thereof; and we hereby approve the said $10,000 item for the purpose of maintenance of roads and bridges. This $10,000 correction is added to and approved in addition to $18,615.38, which has heretofore been approved by the excise board, making a total sum of $28,615.38, approved and allowed for the purpose of maintenance of roads and bridges in Greer county, Okla."

Notice of the contemplated action of the excise board was published in apparent conformity of law, and this action of the excise

board was properly made a matter of record in the office of the State Auditor and clerk of the Court of Tax Review.

Upon hearing by the Court of Tax Review that court sustained the protest upon the grounds that the item for construction of bridges was not sufficiently itemized, and ordered the same stricken and the tax levy reduced accordingly. The judgment of that court apparently ignored this action of the excise board upon the theory that such board was without authority to so act.

It is urged by the taxing officials that it was the legal right and duty of the excise board to correct the items of appropriation in the manner shown.

The protestants assert that the appropriation for construction of bridges was not properly itemized (and this appears to be conceded), and assert further that the taxing officials were without authority to alter or change the budget as was here done.

Whatever may have been the original intention on the part of the taxing officials as to the purpose of this $10,000 appropriation, it is urged that the original item of appropriation, as actually made by the excise board, was in reality an appropriation for construction of bridges, and that it was not itemized as required by statute, and that the action taken by the taxing officials on December 2d and 6th, respectively, although termed by the taxing officials a correction, was legally equivalent to the striking from the budget of the $10,000 appropriation for construction of bridges and the levy originally made therefor, and the adding to the budget of an additional item of $10,000 for the maintenance of roads and bridges with the levying or relevying of a tax for same. It is not questioned but that the item of $10,000 is sufficiently itemized under the classification of maintenance of roads and bridges, nor that the total tax finally levied or sought to be levied is in excess of any constitutional or statutory limit otherwise.

Section 12306, O. S. 1931, provides:

"The excise board may reconvene at any time within 60 days after the filing of the budgets and levies with the State Auditor and reduce any protested budgets and levies which the excise board deems to be illegal."

This provision of the statute specifically grants authority to the excise board to convene at any time within 60 days after the filing of budgets and levies. In the instant case the excise board did convene or reconvene within 60 days after the filing of the budget, and

reduced the specific item protested by entirely striking the same from the budget. This it was specifically authorized to do by statute, aside from what might have been its incidental power or authority. See Frank O. Lowden v. Caddo County Excise Board, 176 Okla. 213, 55 P. (2d) 472.

Strictly speaking, it might be said that the striking of this $10,000 item from the budget, which was the specific item protested, effectively disposed of the protest in the exact form as filed. In view of the fact, however, that an additional appropriation was made in an amount equal to the amount stricken, and the tax relevied or a new tax levied in the same amount, the subsequent act of the taxing officials is of considerable public importance, and we must determine whether or not the local taxing officials could in December, 1935, and under the fact situation as here presented, add the sum of $10,000 to its appropriation properly itemized and levy a tax to finance the same. We observe that the former attempt to levy the tax in dispute was ineffective by reason of the fact that the appropriation item for which it was levied was not properly itemized. We then inquire whether or not the original attempt to levy the tax exhausted the power of the local taxing officials to levy the same. On this subject we find the following statement in Cooley on Taxation, 4th Ed., vol. 3, p. 2097, par. 1035:

"The taxing power once conferred is presumptively continuous, and to be exercised again and again as often as may be required by the exigencies of government and as often as may be consistent with the act of delegation. But custom has much to do with the construction of such powers, and sometimes a single exercise must be deemed to exhaust the power for the time being, when the custom is to tax but once within a certain period of time; as for instance, within the year. And this is the general custom in the case of local taxes. If the amount of tax which by law can be imposed for the year is already levied, the authority is of course exhausted, and a further levy under any pretense is void. It is of no legal importance that the first levy which exhausted the power was made under the compulsion of judicial mandamus. But an abortive attempt to make an assessment does not exhaust the power, and if no other obstacle exists, the officers may disregard the futile action and proceed anew."

It is well known that under our system of tax laws, as provided by the Constitution and the statutes, the power to tax is vested in the taxing officials who acted in this case. It is equally well known that this power to

tax is to be exercised by the the taxing officials only. Our laws provide for the preparation of budgets and the presentation of same to the excise board during the early weeks of each fiscal year. The various statutes fix the dates for the preparation, presentation, and action upon such budgets and the holding of special elections for increased levies, but these provisions are generally directory, and such actions may be effectively had at dates later than those named in the statutes. Board of Excise of Oklahoma County v. Board of Directors of School District No. 27 of Oklahoma County, 31 Okla. 553, 122 P. 520; Missouri Pacific R. Co. v. McIntosh, Co. Treas., 92 Okla. 153, 218 P. 693; section 12679, O. S. 1931.

After all of these preliminaries to the making of appropriations and levying the tax, the taxes are spread upon the tax rolls and the collection thereof is usually begun at approximately the middle of each fiscal year, although a delay in spreading the tax on the rolls is not destructive of the validity of the levies. And so it is to be seen that under our tax system it is contemplated that only one annual levy is to be made, and the power to make such levy in the instant case is unquestionably given to the taxing authorities who acted in this case.

In Colorado & Santa Fe Ry. Co. v. Board of Commissioners of Boulder County, 196 P. 331, the Supreme Court of Colorado held in paragraphs 1 and 2 of the syllabus thereof:

"The provision of Rev. St. 1908, section 5760, that the county commissioners shall make a levy on the first Monday of November, is directory, so that an unsuccessful attempt to levy a tax did not exhaust their power to make a new and valid levy afterwards.

"If the board of county commissioners can cure a total omission to make a levy, or the making of a totally invalid levy, by making a subsequent levy, it can remedy any defect which may have made a former levy partially invalid."

A portion of the tax originally levied in the Colorado case was invalid, just as was true in this case, and the taxing authorities subsequently relevied the tax in the manner provided by law, and their action and authority therein was upheld.

Had the board of county commissioners in the instant case requested this action of the excise board at any time prior to filing the budget with the State Auditor, no one could have questioned the validity of the appropriation and levy. Had the action taken occurred subsequent to the filing of the budget with the State Auditor, and before a protest was filed, we think the same would have afforded no basis of a serious question. What is it, then, which prevents the action at the time it was taken? Upon what theory may it be said that the filing of a protest divests the local taxing officials of authority to levy taxes which is clearly given them by law, and which in many instances is mandatory and frequently compelled by mandamus? We know of no statutory prohibition against the action, and the power to levy a tax within legal limits not having been validly exercised, such power was not exhausted by the abortive attempt to levy the same.

We think it might well be said that the power to levy taxes is given to the local officials in cases such as this, and that such power may be fully exercised only once during each current year, and that when a tax levy has once been spread upon the tax rolls and the collection of taxes has commenced, such power to tax would then have been fully exercised and exhausted. It is probable that other circumstances may be shown which would impel the conclusion that the power to levy had been exhausted, if it be shown that a tardy effort to exercise the power results in disrupting the general scheme of levying and collection of taxes, but such is not shown here, nor is there any suggestion that such condition may exist in the instant case.

It seems to be the theory here that because a protest was filed, the taxing officials cannot avoid the effect of the protest and divest the protestant of its right to prevail. Initiative Petition No. 100, and the amendments thereto, under which the protest was filed, was in our opinion designed only to protect the taxpayer from unlawful appropriations and tax levies, and its provisions relating to tax protests were not intended as a trap to be used for the purpose of limiting the authority of taxing officials to levy proper taxes for legal purposes. Our several laws provide specifically for the limits of levies, and it is thereby intended generally that local officials may levy taxes freely and within their discretion up to these legal limits. When the taxpayer has been afforded an adequate remedy for protection from appropriations and levies in excess of these limits or for illegal purposes, he has obtained the full benefit of the tax protest laws.

The protestant asserts that this subsequent action of the excise board is prohibited by the rule announced in Chicago, R. I. & P. Ry. Co.'s Protest, 142 Okla. 242, 286

P. 316. While the facts in that case are different from the facts here, we observe that the rule as there announced in paragraph 2 of the syllabus, if given a literal application, might prevent the action in the instant case, and might, indeed, prevent any similar subsequent action of the excise board merely because of the filing of a protest. Upon further study and mature reflection, we think it unsound to say that the mere filing of a protest must be judicially declared in all cases to operate to prevent the excise board from doing that which theretofore the board could have done with complete legality and in the proper discharge of its duty to the people and without depriving any one of a just right. Although that appears to be the effect of the rule announced in the above cited decision, the subsequent case of Protest of Chicago, R. I. & P. Ry. Co., 150 Okla. 167, 1 P. (2d) 383, was sharp withdrawal from that rule, if not in fact a complete repudiation thereof. In the latter decision it was held that, although the original appropriations as made by the excise board and certified to the State Auditor were illegal, and although a protest thereto had been filed on account of such illegality, the excise board might thereafter reconvene and take appropriate action to relieve against the illegality and to make legal appropriations or legally complete the making of the appropriations. In that latter determination it must have been observed by the court that the former rule was not supported by statute and should not be followed. To further clarify the matter we now think the rule announced in paragraph 2 of the syllabus in Chicago, R. I. & P. Ry. Co.'s Protest, 142 Okla. 242, 286 P. 316, should be expressly overruled.

It must be apparent that the further authority of the excise board over the budgets is not completely destroyed either by the filing of the budgets with the State Auditor or by the mere filing of a protest. It must be equally apparent that the former declaration which we now overrule could have no proper application to the facts in this case, any more than it could have had proper application to the facts in the Protest of Chicago. R. I. & P. Ry. Co., subsequently decided. The exact rule as stated in Chicago, R. I. & P. Ry. Co.'s Protest, 142 Okla. 242, 286 P. 316, is too broad in its scope, and since it cannot be completely followed, it should be, and is, overruled.

Having concluded that the taxing officials acted within the scope of their authority, and that the total legal rate of levy has not been exceeded, we do therefore reverse the ruling of the Court of Tax Review.

OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur. RILEY, BAYLESS, and GIBSON, JJ., dissent. McNEILL, C. J., absent.

BUSBY, J. (concurring). I concur in the view expressed by the majority opinion in this case that a municipality is authorized to correct its budget after the same has been filed with the State Auditor.

I believe, however, that the authority thus recognized should be subject to the limitation that, when the correction either increases or diminishes the amount of the levies, it should not be permitted to be made after the taxes have been extended on the rolls by the county assessor and such rolls have been delivered to the county treasurer. This for the reason that taxes may then be paid and great confusion would result if additional levies were made against the property of taxpayers who have previously paid their taxes.