ST. LOUIS-SAN FRANCISCO RY. CO. v. TILLMAN COUNTY EXCISE BOARD.

No. 33519. July 19, 1949.

208 P. 2d 576.

M. G. Roberts, of St. Louis, Mo., and Satterfield & Franklin, of Oklahoma City, for plaintiff in error.

Howard M. McBee, Co. Atty., of of Frederick, and Mac Q. Williamson, Atty. Gen., and Richard M. Huff, Asst. Atty. Gen., for defendant in error.

ARNOLD, V. C. J. In 1947, the Governing Board of School District C-3 of Tillman county filed with the excise board its financial statement and estimate of needs for the fiscal year beginning July 1, 1947, and ending June 30, 1948. In its certificate to this budget the governing board informed the excise board that the district had dispensed with its school for that fiscal year and that the county superintendent had transferred all of its pupils to other districts in the county. It also advised the excise board that on March 25, 1947, an election had been held in the district at which a majority of the voters authorized an excess levy of 10 mills for school purposes. It requested the excise board to make proper appropriations for the transportation and education of the transferred pupils to the other districts. The financial statement disclosed that the district had surplus funds to the amount of $7,664.48. The excise board ascertained by an examination of the budgets filed by the districts to which the pupils from C-3 had been transferred that the total cost of transportation and education of said pupils, based upon the per capita costs for the previous fiscal year in those districts, amounted to $6,182.07 and from the surplus funds it appropriated for the transfer fees the sum of $6,182.07.

Apparently through some oversight the excise board, in making its calculations on which it based its appropriations for transfer fees, fixed such appropriations at the amount which is authorized by art. 1, sec. 4 (H.B. No. 85, 1947 Legislative Session) for school

districts transferring only a part of their pupils to other districts which makes per capita cost in the transferee districts the basis. The basis for calculation of transfer fees and authority for appropriation therefor in districts transferring all of their pupils is contained in a different section of the statute, sec. 5(c). Thereafter the excise board filed the budget with the State Auditor on November 12, 1947, and thereafter the county superintendent of Tillman county received from the State Board of Education a letter dated November 14, 1947, which called his attention to the fact that the appropriation made by the excise board for transfer fees in District C-3 was insufficient under the provisions of the Act, and advised as follows:

"District C-3, Henderson, has failed to make any ad valorem levy, which will make it very difficult for those districts (C-2, C-9, and I-158) receiving transfers from C-3 since we will charge those districts more than each will receive unless the budget of C-3 is corrected."

On November 21, 1947, the excise board filed with the State Auditor correction sheets by which the transfer fees appropriated for District C-3 were increased by the product of a 15-mill levy from $6,182.07 to $15,328.51. These correction sheets were filed with the State Auditor prior to the filing of any protest against the budget. Thereafter, on December 19th, the St. Louis-San Francisco Railway Company, a corporation, and taxpayer in all the districts involved, filed its protest alleging the illegality of the corrected budget in the amount of $9,142.95, being the difference between the amount originally appropriated for transfer fees and the amount appropriated by the correction sheets. The Court of Tax Review denied the protest and protestant has appealed and relies upon two grounds for reversal of that judgment:

"(1) The judgment of the court denying the protest of plaintiff in error is contrary to law, and not sustained by the evidence.

"(2) The court erred in failing to hold that the levy complained of in said protest was illegal and void for the reason that the statutory provision controlling said levy was unconstitutional."

A situation very similar to this was considered in the case of Lowden et al. v. Caddo County Excise Board, 176 Okla. 213, 55 P. 2d 472, and in the body of the opinion the court used this language which appears very appropriate to the facts here involved:

"Under the facts in the instant case it was the duty of the excise board in considering the budgets of the several school districts here involved to appropriate greater amounts for the use of the school districts than it did appropriate by its original action. Its duty therein was plainly fixed and mandatory, and was such a duty as might have been, and frequently has been, compelled by mandamus. Through error, or otherwise, the excise board fixed certain appropriations therein and certain tax levies therein at a lesser amount than it was its legal duty to do. Had the excise board within the course of one, two or three days, or within the course of the 40-day period, either voluntarily or by order of a court of competent jurisdiction sought to withdraw these appropriations and levies, we have no doubt that the same still remained subject to such withdrawal for that purpose, that is, to correct them and thereby do that which the board should have done in the first instance."

In fact, it is conceded that the correction made by the excise board was lawfully made if the increased appropriations were made within the limits of valid law, that is, within the limits and according to section 5 (a), supra, if constitutional. We think that the form of request by the governing board was a request for an appropriation for the necessary amount under the applicable section. It is also conceded by protestant that its protest as to the alleged excess appropriations for the receiving districts is entirely dependent upon the alleged unconstitutionality of section 5 (a), supra. We agree and for this rea-

son we do not discuss its objection to the levy in the receiving districts.

Under its proposition that the questioned section is unconstitutional, it is conceded that some of the questions thereunder raised and argued were passed upon in our holding in the case of School District No. 25 of Woods County v. Hodge et al., 199 Okla. 81, 183 P. 2d 575. As to our holdings therein, however, it contends here that in that case we reserved the question of the constitutionality of the section when tested by the operative effect thereof under a stated fact situation. In support of this contention it points to the following language used by us in that opinion:

"Any severable portion of the act, though invalid, will not be discussed by us nor determined at this time because not of demanding present importance and the other circumstances maintaining, unless it appears that the enforcement thereof would adversely and prejudicially affect the parties hereto or those similarly situated. . . . It is not deemed advisable under all the circumstances to pass upon questions raised which will arise only under the happening of a future contingency that may not occur or that relate to severable matters that may not affect the parties, or any one similarly situated, prejudicially."

However this may be, the practical effect of the contention made is that the Woods County case should be overruled insofar as it holds section 5 (a), supra, constitutional.

The objections here urged asserting the unconstitutionality of that section that were specifically considered by us in the Woods County case were based on the same reasoning as that now presented.

In discussing the question of the constitutionality of that section in the Woods County case, this court said:

"The cases cited by plaintiffs involve the constitutionality of section 10607, C. O. S. 1921. This statute we held to be unconstitutional. In that statute it was provided that the 'excise board shall in every case make and provide a levy which will be sufficient to raise the amount of transfer fees required.' In the section of the act now considered, it is provided:

" 'If no school is maintained in a district from which pupils are transferred, the maximum funds available from a fifteen (15) mill levy (or its equivalent in funds used for mandatory tax reduction purpose) and all other miscellaneous revenue, including cash surpluses, and surplus net current tax in process of collection, shall be appropriated for transfer fees even though in excess of the per capita cost of the district to which the pupils are transferred as calculated for districts as provided in this act.'

"It is obvious that this is not a levy by the Legislature. It is equally as obvious that this is not a mandatory levy for two reasons: (1) If such a school district has available the equivalent of a 15-mill levy in funds used for mandatory tax reduction purposes, no levy is required, and (2) the only mandatory feature contained in this section is that in the event the school district desires to maintain in existence that school district from which all pupils are transferred, that is, to retain its identity as a school district and transfer all of its pupils and not be disorganized or annexed to another district as provided by the act, then it is necessary that a 15-mill levy, if no equivalent fund for mandatory tax reduction purposes is available, be levied. The objectionable feature of section 10607, C. O. S. 1921, which authorized the levy by the county excise board, is not present in article 1, sec. 5(a) of the Act. Here is merely set up a standard by the Legislature to which such school districts which desire to transfer all their pupils and yet retain their identity as a school district must conform."

We there held that the title to the Act did not offend against article 5, sec. 57 of the Constitution, and that the Act as a whole and each of its component parts constituted general legislation and were not violative of article 5, sec. 59. As to section 5(a), we there

held that the 15-mill levy thereby authorized was not a mandatory levy nor violative of article 10, sec. 20, of the Constitution, and showed the inapplicability of the rule announced in School District No. 4, Garfield County, v. Independent School District No. 4 1/2 of Garfield County, 153 Okla. 171, 4 P. 2d 1031, and School District No. 85, Kay County, v. School District No. 71, Kay County, 135 Okla. 270, 276 P. 186, here also relied upon by protestant. It is here urged by protestant, in addition to the questions passed upon in the Woods County case that the 15-mill levy here involved is violative of article 10, sec. 9, which forbids a levy of ad valorem taxes for state purposes, and that it violates article 10, sec. 19, of the Constitution, which forbids the use of taxes levied for one purpose for any other purpose. We think the levy here involved was not for a state purpose, but that it was levied for the purpose of discharging the obligation of School District C-3 to the receiving districts for the education and transportation of its pupils, and there is nothing in the record which discloses that the proceeds of such levy shall be used for any other purpose. The fact that the amount of State Aid payable to the transferee districts would be lessened by the payment of the transfer fees required by the provisions of section 5 (a), supra, would not make the appropriations for transfer fees one for a state purpose. No doubt the Legislature, realizing that the receiving districts would have to levy a 15-mill tax to comply and qualify for State Aid while furnishing the entire educational facilities for the all-transfer districts, thought that the formula or basis provided for the transfer fee to be paid in such case would be generally fair and equitable. The facts in this case may appear extreme and unusual and for this reason do not afford a good general viewpoint as to the fairness of the rule generally. Sight must not be lost of the fact that the transferring district could do as it did—transfer all of its pupils—or it could disorganize and

become a part of the receiving districts, in which case its property would be subject to the tax lawfully laid by the attaching district or it could maintain a home school for all its pupils, and receive State Aid if it complied, or it could transfer some of its pupils, paying therefor on a per capita cost basis as prescribed in such instances. Here the governing board determined the policy to be followed and exercised one of the privileges accorded. District C-3 did not have to adopt the plan pursued. The voters of that district approved an extra 10-mill levy for school purposes and its governing board determined it would be for the best interests of the district to transfer all its pupils to other districts relieving it of the detailed responsibility of maintaining a home school. The transferee districts did not have to receive the pupils transferred to them unless the compensation prescribed was provided. The fee prescribed does not appear under all the circumstances to be unjust, arbitrary or capricious, and this court cannot so denominate the section.

It is true, as asserted by protestant, that this court has held that a tax levy in excess of the amount necessary to produce the funds that are required by a municipality is illegal and void. Grubb v. Smiley, 142 Okla. 19, 285 P. 38; St. Louis & S. F. Ry. Co. v. Haworth, 48 Okla. 132, 149 P. 1086; St. Louis & S. F. Ry. Co. v. Thompson, 35 Okla. 138, 128 P. 685; St. Louis & S. F. Ry. Co. v. Amend, 44 Okla. 602, 145 P. 1117; St. Louis & S. F. Ry. Co. v. Tate, 35 Okla. 563, 130 P. 941; St. Louis & S. F. Ry. Co. v. Lindsey, 42 Okla. 198, 140 P. 1153; and Ryan v. Bass Furniture Co., 113 Okla. 86, 241 P. 786. The situation here is quite different. To effectively accomplish the purpose of educating the children of District C-3 by and through the agency of the receiving districts, it was necessary under section 5 (a), supra, that District C-3 provide the funds required for transfer fees. The receiving districts must take this revenue into account in es-

timating their needs. A tax levy by them in excess of an amount necessary to produce the funds required by said districts would be illegal. The rule of the cited cases has no application to the situation presented.

Affirmed.

DAVISON, C. J., and WELCH, LUTTRELL, HALLEY, JOHNSON, and O'NEAL JJ., concur. GIBSON, J., dissents.